**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TRACI MARIE CRAFT, | : | CIVIL NO.: 1:25-cv-01800 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## I. Introduction.

In this social security action, Plaintiff Traci Marie Craft seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income under Title XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

**II. Background and Procedural History.**

We refer to the transcript provided by the Commissioner. *See docs. 4–1* to *4–8*.[1] On October 4, 2022, Craft filed an application for supplemental security income, alleging that she has been disabled since November 1, 2012. *See Admin. Tr.* at 22, 188. After the Commissioner denied her claim at the initial and reconsideration levels of administrative review, *id.* at 74–95, Craft requested an administrative hearing, *id.* at 115. On May 9, 2024, Craft—who was represented by an attorney—as well as a vocational expert testified at a hearing before Administrative Law Judge Jarrod Tranguch (the "ALJ"). *Id.* at 40–73. On September 27, 2024, the ALJ denied Craft's claim for benefits. *Id.* at 18–39. Craft appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id.* at 1–7. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In September 2025, Craft, through counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See Doc. 1*. She requests that the court reverse and remand this case. *Id.* at 1.

---

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Craft's claims.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 8*. The Commissioner filed a certified transcript of the administrative proceedings. *Doc. 4*. The parties filed briefs, *see docs. 10–12*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Craft is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, '"the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision.

On September 27, 2024, the ALJ denied Craft's claim for benefits. *Admin. Tr.* at 18–39. He proceeded through the five-step sequential-evaluation process.

### A. Step One.

At step one of the sequential-evaluation process, the ALJ found that Craft had not engaged in substantial gainful activity since September 27, 2022, the date she filed her application for benefits. *Id.* at 23.[2]

### B. Step Two.

At step two of the sequential-evaluation process, the ALJ found that Craft had the following severe mental impairments:[3] a panic disorder; a generalized anxiety disorder, a social anxiety disorder, and a depressive disorder. *Id*. at 24

---

[2] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to regulations as well as citations to the record.

[3] The ALJ concludes that Craft had both severe physical and severe mental impairments. Because Craft's claims in the instant case are based on the ALJ's treatment of her mental impairments and the opinion evidence regarding her mental impairments, we do not recount the ALJ's discussion of Craft's physical impairments or the evidence or opinions relating to her physical impairments.

**C. Step Three.**

At step three of the sequential-evaluation process, the ALJ found that Craft did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 24–27. Specifically, as to Craft's mental impairments, the ALJ considered Listings 12.04 and 12.06. *Id*. at 25–27. In doing so, he considered the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders[4] and in the listings, known as the paragraph B criteria.[5]

---

[4] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. § 416.920a. As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at § 416.920a(c)(3). A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id*. at § 416.920a(c)(4). The ratings in these four broad functional areas are used at Step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at Step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id*. at § 416.920a(d).

[5] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2. Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F.R. § 416.920a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A.2.b, 12.00.E, 12.00.F. This is what the ALJ is referring to when he refers to the paragraph B criteria.

The ALJ determined that Craft had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. *Id*. at 25–26. As to interacting with others—the area most relevant to the claims in this case—the ALJ stated:

> In interacting with others, [Craft] has a moderate limitation. She incurs a fear of social interaction and verbal confrontation. This limitation interferes with personal relationships. However, she resides in a house with family members. [Craft] leaves her home multiple times per day and she travels from place to place by walking, riding as a passenger, and driving a car. She is able to travel alone or with the accompaniment of others. [Craft] shops in stores for food and for other necessities. She communicates with others in person, via phone, and through video chat. Getting along with family, friends, and neighbors is not an issue for [Craft]. Interacting with authority figures remains within [Craft]'s residual ability level and [Craft] has never been fired due to interpersonal issues. The medical evidence of record does not document any serious issues interacting with her treatment providers, and she interacted appropriately at the hearing.[6] Overall, the record as a whole does not establish that [Craft] experiences more than moderate limitations when she interacts with others.

*Id*. at 25–26.

---

[6] Although the ALJ states that Craft interacted appropriately at the hearing, it appears that Craft was crying throughout the hearing. The following exchange between Craft and her counsel occurred at the hearing:

> Q Ms. Craft, are you, are you crying right now?
> A Yeah.
> Q Have you been crying through most of this hearing?
> A Yes.

*Admin. Tr.* at 60.

The ALJ recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[,]" and the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." *Id*. at 26. And he asserted that his RFC that follows "reflects the degree of limitation" he "has found in the 'paragraph B' mental function analysis." *Id*. The ALJ also determined that Craft did not satisfy the paragraph C criteria. *Id*.

**D. The RFC.**

The ALJ then determined that Craft had the RFC to do light work[7] with both some exertional limitations and some mental limitations. *Id*. at 27. As to the mental limitations, he concluded that Craft "can understand, remember and carry out simple instructions; can perform simple, routine, and repetitive tasks; can

[7] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

perform jobs that would be considered 'low stress,' in that they would involve only occasional, simple decision-making, and only occasional gradual changes in the work duties and work setting; and can have frequent interaction with coworkers, supervisors, customers, or members of the general public." *Id*.

In making this RFC assessment, the ALJ considered Craft's testimony and assertions regarding her limitations, Craft's medical records and treatment notes, her activities of daily living, and the medical opinions in the record. *Id*. at 27–32.

As to the medical opinions regarding Craft's mental impairments, the ALJ's considered the opinion of Craft's treating psychiatrist and found it unpersuasive:

> Allison Bailey, MD completed a mental residual functional capacity assessment, of [Craft] on July 3, 2024. Therein, she indicated that [Craft]'s panic disorder, generalized anxiety disorder, and social anxiety disorder caused [Craft] ongoing work related limitation ranging from "limited but satisfactory," "seriously limited," and "unable to meet competitive standards." However, most notably, she indicated that [Craft] would miss more than four days per month (in excess of customary industry standards), and that [Craft] is unable to engage in full-time competitive employment on a sustained basis, despite being able to handle her own Social Security Administration benefits, if awarded. Finally, in the past year, her GAF score was measured as being in the 40 to 50 and 50 to 60 range. The undersigned finds this opinion unpersuasive, as the limitations suggested herein appear to overestimate [Craft]'s degree of restriction. Although the records clearly show that she has incurred some periods of increased symptomatology, overall, her mental status examination findings more consistently revealed more mild to moderate symptoms (appropriate cooperative behavior, normal speech, dysthymic mood, linear/goal directed thought processes, no abnormal thought content, no perceptual disturbances/suicidal ideation,

> etc.). Moreover, Dr. Bailey appears to have evaluated [Craft] one time prior to the issuance of this opinion[]. The objective evidence corroborated the results of the examination findings and finds support by [Craft]'s retained ability to complete at least some household tasks (laundry, washing dishes, preparing at least simple meals, handling her finances, etc.). Because [Craft]'s signs, symptoms, and residual ability are more consistent with an individual who retains a residual functional capacity for simple work with limited contact with others, this opinion, an opinion that suggests complete disability, is found to be unpersuasive.

*Id*. at 30–31.

The ALJ found the GAF scores assigned to Craft "to have limited persuasive value." *Id*. at 31. He then considered and found persuasive the opinions of the state-agency consultants:

> Virginia Carolyn Martin, PsyD completed the state agency initial mental assessment on January 13, 2023. Therein, she indicated that [Craft]'s anxiety, depression, and substance abuse, caused [Craft] mild limitation in her ability to understand, remember, and apply information, moderate limitation in her ability to interact with others, moderate limitation in her ability to concentrate, persist, and maintain pace, and mild limitation in her ability to adapt or to manage herself. In her residual functional capacity assessment, [Craft] has: moderate limitation in her ability to carry out detailed instructions; moderate limitation in her ability to maintain attention and concentration for extended period; moderate limitation in her ability to complete a normal workday/workweek without interruption from psychologically based symptoms; and moderate limitation in her ability to interact with others. In sum, [Craft] was considered able to meet the basic mental demands on a sustained basis despite the limitations resulting from her impairments. Karen Evelyn Weitzner, PhD completed the state agency mental reassessment on August 22, 2023. Therein, she reached largely the same

> conclusion as that of Dr. Martin. The undersigned finds these opinions generally persuasive, as the psychological evidence of record, inclusive of the mental status examination findings (appropriate cooperative behavior, normal speech, dysthymic mood, linear/goal directed thought processes, no abnormal thought content, no perceptual disturbances/suicidal ideation, etc.), supports the limitation to simple work, with restricted social contact, suggested by Drs. Martin and Weitzner. Throughout the period of review, [Craft] has treated and experienced sufficiently documented mental health symptoms that have restricted his [sic] ability to work and to maintain proper focus, concentration, and cognition. These continuing issues are clearly consistent with an individual who requires a limitation to simple intellectual work, with restricted social contact, and as such, the undersigned finds these opinions persuasive.

*Id*. at 31–32.

**E. Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Craft had no past relevant work. *Id*. at 32.

**F. Step Five.**

At step five of the sequential-evaluation process, considering Craft's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as linen grader, garment sort [sic], and basket filler—that exist in significant numbers in the national economy that Craft could perform. *Id*. at 33.

In sum, the ALJ concluded that Craft has not been disabled since September 27, 2022 (which is the date she filed her application). *Id*. at 34. Thus, he denied Craft's claim for benefits. *Id*.

**V. Discussion.**

Craft presents two claims: (1) the ALJ improperly rejected the opinion of her treating psychiatrist Dr. Bailey; and (2) the social limitations the ALJ included in the RFC are not supported by substantial evidence. Because the ALJ's discussion of Dr. Bailey's opinion is part of the ALJ's mental RFC assessment, Craft's claims are interrelated, and we address them together. And because these claims involve the ALJ's RFC assessment and opinion testimony, before addressing the merits of those claims, we set forth general standards regarding the RFC assessment and the evaluation of opinion testimony.

**A. The RFC.**

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of

record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

**B. Opinion Testimony.**

Under the current regulations, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain how he or she "considered the supportability and consistency factors for a medical source's medial opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are defined in 20 C.F.R. §§ 404.1520c(c), 416.920c(c). As the regulations provide, supportability means: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative

medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Simply put, supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Commissioner of Social Security*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021*), adopting report and recommendation*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022). On the other hand, consistency means: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The consistency factor focuses on "how well a medical source is supported, or not supported, by the entire record." *Acosta Cuevas*, 2021 WL 363682, at *10.

**C. The ALJ's mental RFC assessment is not supported by substantial evidence because the ALJ did not adequately articulate his reasons for finding the opinions of Dr. Bailey unpersuasive and he did not adequately articulate the basis for his RFC assessment.**

Craft contends that the ALJ failed to properly address Dr. Bailey opinions. She also contends that the ALJ's mental RFC assessment is not supported by substantial evidence. We agree with both contentions.

As described above, after setting forth a summary of Dr. Bailey's mental RFC assessment, the ALJ found Dr. Bailey's opinions unpersuasive. In doing so,

the ALJ stated that it appeared that Dr. Bailey evaluated Craft only one time prior to issuing her opinions. *Admin. Tr.* at 31. But this is factually incorrect. Dr. Bailey completed her mental RFC assessment, which contained her opinions, on July 3, 2024. *Id*. at 1871–73. And the records before the ALJ showed that Craft consulted with Dr. Bailey on numerous occasions before Dr. Bailey rendered her opinions. *See id*. at 889–95 (September 30, 2022); *id*. at 1044–48 (October 14, 2022); *id*. at 1073–77 (December 2, 2022); *id*. at 1169–72 (March 29, 2023); *id*. at 1191–95 (July 12, 2023); *id*. at 1202–07 (June 16, 2023); *id*. at 1232–36 (August 16, 2023). Although in an earlier section of his opinion, the ALJ cited to some—but not all—of the exhibits that contain Dr. Bailey's records, *see id*. at 29, when analyzing Dr. Bailey's opinion, he failed to recognize that Dr. Bailey had a treatment relationship with Craft. And given that he did not even recognize that relationship, he failed to explain how he evaluated the supportability of Dr. Bailey's opinion.

In evaluating Dr. Bailey's opinion, the ALJ does states: "Although the records clearly show that [Craft] has incurred some periods of increased symptomatology, overall, her mental status examination findings more consistently revealed more mild to moderate symptoms (appropriate cooperative behavior, normal speech, dysthymic mood, linear/goal directed thought processes, no abnormal thought content, no perceptual disturbances/suicidal ideation, etc." *Id*. at 31. As mentioned, in an earlier section of his opinion, the ALJ discusses some of

the mental status examination findings, and there, like when evaluating Dr. Bailey's opinion, he concludes that the mental status examination finding were generally mild to moderate in severity. *Id*. at 29.

But in concluding that Craft's mental status examination findings were generally mild to moderate in severity, although the ALJ mentions some findings that could be considered more severe, he focuses on parts of the findings that show areas where Craft was functioning more normally. For example, the ALJ states: "Mental status examination findings in September of 2022 showed that [Craft]'s mood was depressed and that her affect was flat." *Id*. at 29. Nevertheless, he says, "[Craft] answered questions appropriately and maintained good concentration." *Admin. Tr.* at 29. Similarly, the ALJ states: "In October of 2022, [Craft]'s mental status examination findings showed that [Craft]'s mood was anxious and her affect was constricted." *Id*. But the ALJ then asserts that "[h]er thought process was logical, linear, and goal directed with no abnormal thought content. She was not suicidal, she was well oriented, here attention was appropriate, and her insight/judgment was good." *Id*. Similarly, the ALJ notes that "[i]n March of 2023, mental status examination findings showed that [Craft] was distraught and anxious." *Id*. "However," the ALJ then states, "she was calm and cooperative and not suicidal. Her thought processes were logical, linear, and goal directed, and without abnormal thought content. She did not hallucinate, she was well oriented,

her attention was appropriate, and her insight/judgment was good." *Id*. Further, the ALJ states "[l]ater in July of 2023, [Craft]'s mood was agitated and overstimulated." *Id*. But "[h]er speech was normal and no thought content or though process abnormalities were noted. She was not suicidal, her attention was appropriate, and her insight/judgment was good." *Id*. In sum, it appears that the ALJ picked out the parts of the mental status examinations that supported his contention that the findings were mild to moderate, but he apparently disregarded the significance of the more limiting aspects of the mental status examination findings. Moreover, several of these mental status examinations were conducted by Dr. Bailey, a fact that it is not clear the ALJ appreciated. And the ALJ made no attempt to explain whether the more limiting findings from the mental status examinations supported Dr. Baileys' opinions.

The ALJ also mentioned that Craft could complete some household tasks (such as laundry, washing dishes, preparing simple meals, handling her finances) as corroborating his conclusion that Craft's limitations are not as severe as Dr. Bailey opined they were. *Id*. at 31. But the ALJ does not explain how Craft's ability to do such limited household activities is not consistent with Dr. Bailey's opinions regarding her limitations in a work setting. *See id*. at 1873-75 (Dr. Bailey's responses regarding Craft's "ability to do work-related activities on a day-to-day basis in a regular work setting.").

Further, when discussing Dr. Bailey's opinion, the ALJ appeared to focus on Dr. Bailey's opinion that Craft would miss four days of work per month and would be unable to engage in full-time competitive employment. *Id*. at 30. He did not explicitly address Dr. Bailey's opinion regarding Craft's other limitations such as her limitations regarding interacting with others in the workplace, including that Craft was seriously limited in her ability to "[w]ork in coordination with or proximity to others without being unduly distracted," seriously limited in her ability to "[m]aintain socially appropriate behavior," and she was unable to meet competitive standards in her ability to "[i]nteract appropriately with the general public." *Id*. at 1873–74.

In sum, the ALJ did not adequately demonstrate that he evaluated whether Dr. Bailey's opinions were supported by her findings or consistent with the other evidence in the record. Accordingly, the ALJ's cursory conclusion that Dr. Bailey's opinions are unpersuasive fails to satisfy his duty to articulate his reasoning sufficient to allow meaningful judicial review of his analysis.

Craft also contends that substantial evidence does not support the ALJ's mental RFC assessment. The ALJ determined that Craft had moderate limitations in interacting with others. *Id.* at 25–26. Further, although, as discussed above, the ALJ found Dr. Bailey's opinion unpersuasive, in doing so he observed that Craft "retains a residual functional capacity for simple work with limited contact with

others[.]." *Id*. at 31. Yet, in setting forth Craft's RFC, the ALJ concluded that Craft "can have frequent interaction with coworkers, supervisors, customers, or members of the general public." *Id*. at 27. The ALJ did not explain why he determined that Craft could have frequent interaction with coworkers, supervisors, customers, and members of the general public in light of the evidence in the record and in light of his own determination that Craft has a moderate limitation in interacting with others and she can do "simple work with limited contact with others." *Id*. at 31. Here, again, the ALJ failed to satisfy his duty to articulate his reasoning sufficiently to allow meaningful judicial review of his analysis.

The ALJ's articulation errors are not harmless. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Thus, a claimant must explain '"how the . . . error to which he points could have made any difference.'" *Id.* (quoting *Shinseki v. Sanders,* 556 U.S. 396, 413 (2009)). "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Here, Dr. Bailey opined that Craft had limitations that would preclude substantial gainful activity, and the ALJ himself found that Craft had a moderate

limitation in interacting with others. In light of this, we cannot say the ALJ's articulation errors were harmless.

**D. Remand is the appropriate remedy.**

Because the ALJ's decision is not supported by substantial evidence, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Craft. We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same). But an "award [of] benefits should be made only when the administrative record of the

case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22. Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019). "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, although Craft's claim has been pending since 2022, we cannot say, at this point, that there has been excessive delay in the litigation of Craft's claim. And we cannot say that substantial evidence on the record as a whole shows that she is disabled and entitled to benefits. Thus, we will remand the case to the Commissioner for further proceedings.

## VI. Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge